## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### NO. 5:11-HC-2153-F

| | |
|---|---|
| RICKY FREEMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     ORDER |
| | ) |
| ROBERT JONES, Superintendent, | ) |
| Pasquotank Correctional Inst., | ) |
| | ) |
| Respondent. | ) |

This matter arises from the petition for writ of habeas corpus [D.E. # 1], pursuant to 28 U.S.C. § 2254, filed by petitioner Ricky Freeman. Petitioner is a state inmate under sentence for convictions on "three counts of attempted first degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury ('AWDWIKISI'), and one count of assault with a deadly weapon with intent to kill ('AWDWIK')." State v. Freeman, 203 N.C. App. 149, 692 S.E.2d 194, 2010 WL 916282 *1 (N.C. Ct. App. Mar. 16, 2010) (unpublished table decision). Presently before the court are respondent's motion for summary judgment [D.E. # 8] and petitioner's response [D.E. # 13]. For the reasons that follow, the court orders that the motion for summary judgment will be granted and the petition dismissed.

### STATEMENT OF THE CASE

Freeman was convicted in the Superior Court of Martin County on December 10, 2008. Id. The North Carolina Court of Appeals described the substantive and procedural facts surrounding

1

petitioner's conviction and sentence as follows:

On 23 November 2007, defendant visited his friend Reggie Peele ("Peele"), who lived in an apartment located at 126 Hatton Street in Williamston, North Carolina ("the Peele Apartment"). Major Anthony Burroughs ("Burroughs") and Trila Wilson Austin ("Ms.Austin") resided in the adjoining apartment ("the Burroughs/Austin Apartment") and shared a porch with Peele. On the night in question, Benjamin Keith Griffin ("Griffin"), Nick Antonio Anthony ("Anthony"), and Robin Bradsher ("Ms.Bradsher") were visiting the Burroughs/Austin Apartment.

Shortly after defendant arrived at the Peele Apartment, he went outside on the shared porch and initiated an altercation with Anthony, who was accompanied by Griffin. The noise of the altercation concerned the remaining visitors inside the Burroughs/Austin Apartment, who came outside and told Anthony and defendant to "let it go." In response, defendant called Ms. Bradsher a derogatory name. A physical altercation between Ms. Bradsher and defendant ensued, and defendant was struck in the head by a flashlight. Subsequently, the others on the porch broke up the fight, and everyone except Ms. Bradsher returned to their respective apartments. Ms. Bradsher went to another apartment across the street.

Later that evening, everyone left the Burroughs/Austin Apartment. Upon leaving, the group was confronted by defendant and Peele; defendant held a golf club and Peele held a bat. After a brief verbal exchange, defendant told Burroughs that he was "going to get [hi]s," then went back inside the Peele apartment.

Burroughs, Griffin, and Anthony then proceeded to a parking lot across the street, where Ms. Bradsher sat in her car. Defendant approached the group and pulled out a gun. Defendant shot Griffin in the thigh and Burroughs in the stomach. When he was finished, defendant then fired the gun into Ms. Bradsher's car. Ms. Bradsher was not struck by any bullets. She was able to drive away, continuing even after she hit the corner of a house with her car.

Defendant was arrested on 27 December 2007. Defendant was subsequently indicted and tried in Martin County Superior Court for three counts of attempted first degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"), and one count of assault with a deadly weapon with intent to kill ("AWDWIK"). On 10 December 2008, the jury returned verdicts finding defendant guilty of all charges.

At sentencing, the State presented defendant's prior record level worksheet ("the worksheet") to the trial court. According to the worksheet, defendant had only one previous misdemeanor conviction in North Carolina. However, there were numerous convictions listed from the state of New York. Specifically, defendant had

2

been convicted in New York for one felony, two driving while impaireds ("DWI"), and several misdemeanors. To support defendant's New York convictions, the State tendered to the trial court defendant's computerized criminal history printout from the FBI's National Crime Information Center ("NCIC") database.

The worksheet, for felony sentencing purposes, listed one felony conviction, a prior New York conviction for felony attempted second degree robbery, as a Class I felony. Additionally, the worksheet listed defendant's two prior New York DWI convictions as Class 1 misdemeanors for sentencing purposes. By adding the points for the felony conviction, the two DWI convictions, and the additional misdemeanor conviction in North Carolina, the trial court determined that defendant had five prior record level points and consequently classified defendant as a prior record level III offender.

Defendant was sentenced to a minimum of 176 months to a maximum of 221 months for each of the three attempted first degree murder convictions. Defendant was also sentenced to a minimum of 93 months to a maximum of 121 months for each of the two AWDWIKISI convictions. Finally, defendant was sentenced to a minimum of 27 months to a maximum of 42 months for the AWDWIK conviction. The sentences for attempted murder were to run consecutively and were to be served in the North Carolina Department of Correction. The sentences for AWDWIKISI and AWDWIK were to be served concurrently with their corresponding attempted murder convictions.

Id. at *1-*2.

Petitioner appealed to the North Carolina Court of Appeals, arguing "that the trial court failed to determine, as required by N.C. Gen. Stat. § 15A-1340.14(e), that defendant's out-of-state DWI conviction was substantially similar to a DWI conviction in North Carolina." Id. at *2. The Court of Appeals agreed with petitioner and remanded for resentencing. Id. at *4. On May 17, 2010, petitioner was resentenced to the same terms of incarceration. Resentencing Judgment and Commitment Form, ex. 5 to Resp.'s Supp. Mem. [D.E. # 9-6]. Petitioner did not appeal his resentencing.

On September 16, 2010, petitioner filed a motion for appropriate relief ("MAR") in the Superior Court of Martin County, which was summarily denied on May 18, 2011. See Order for

3

Denial of Motion for Appropriate Relief, ex. 7 to Resp.'s Supp. Mem. [D.E. # 9-8]. On June 13, 2011, petitioner filed a petition for writ of certiorari review in the North Carolina Court of Appeals. On July 6, 2011, the Court of Appeals denied the petition for certiorari.

On July 21, 2011, at the earliest, petitioner filed the instant petition for writ of habeas corpus. On April 9, 2012, respondent filed his motion for summary judgment and supporting memorandum with exhibits. On May 25, 2012, petitioner filed his response. The matter is now ripe for ruling.

## DISCUSSION

I. Standard of Review

A. Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Section 2254(d)

To the extent petitioner's claims were decided on the merits in the state court, the court's review is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides as follows:

4

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Likewise, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. __, __, 130 S.Ct. 841, 849 (2010). See also Winston v. Kelly, 592 F.3d

5

535, 554 (4th Cir. 2010) ("For a state court's factual determination to be unreasonable under §
2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the
weight of the evidence that it is objectively unreasonable.") (citing Schriro v. Landrigan, 550 U.S.
465, 474 (2007)). Thus, while "deference [in the habeas context] does not imply abandonment or
abdication of judicial review" and does not "preclude relief," Miller-El v. Cockrell, 537 U.S. 322,
340 (2003), the deferential standard imposed by § 2254(d), as to both legal conclusions and factual
determinations by the state courts, erects a substantial bar for state inmates seeking habeas relief in
federal court.[1]

The statute "does not require that a state court cite to federal law in order for a federal court
to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236
F.3d 149, 160 (4th Cir. 2000). If the state court did not articulate the rationale underlying its
adjudication, a federal habeas court must examine the record and the clearly established Supreme
Court precedent to determine whether the state court's adjudication was contrary to, or involved an
unreasonable application of, clearly established federal law. Id. at 158. "When a federal claim has

---

[1]    In this vein, the Supreme Court recently observed as follows:

If this standard is difficult to meet, that is because it was meant to be. As amended by
AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims
already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing
AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases
where there is no probability fairminded jurists could disagree that the state court's decision conflicts
with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus
is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for
ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens,
J., concurring in judgment). As a condition for obtaining habeas corpus relief from a federal court,
a state prisoner must show that the state court's ruling on the claim being presented in federal court
was so lacking in justification that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. __, __, 131 S.Ct. 770, 786-87 (2011).

been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington</u>, 562 U.S. at __, 131 S.Ct. at 784-85. Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. <u>Fisher v. Lee</u>, 215 F.3d 438, 445 (4th Cir. 2000).

Only after a petitioner establishes that the state court's adjudication of his claims was "contrary to" or an "unreasonable application of" clearly established federal law, or was "based on an unreasonable determination of the facts in light of the evidence," may a federal court proceed to review a state court judgment independently to determine whether habeas relief is warranted. <u>Rose v. Lee</u>, 252 F.3d 676, 689-90 (4th Cir. 2001). <u>See also</u> <u>Frazer v. South Carolina</u>, 430 F.3d 696, 718 (4th Cir. 2005) ("Because the state court's decision in this case was both contrary to and involved an unreasonable application of clearly established federal law, the district court properly reviewed Frazier's claim *de novo*."); <u>Lynch v. Polk</u>, 204 F. App'x 167, 170 (4th Cir. 2006) (unpublished decision) ("If a legal or factual error of the degree specified in § 2254(d)(1) or (d)(2) occurred, then a federal court has the obligation to conduct an independent review of the petitioner's claims to determine whether the issuance of a writ is warranted.").

C.    Procedural Default

Respondent argues that petitioner has procedurally defaulted each of his claims because, in denying his MAR, the state court applied N.C. Gen. Stat. § 15A-1419(a)(3) and held that petitioner's claims were barred because he could have raised each of his claims on direct appeal of his conviction yet failed to do so. Respondent asserts that § 15A-1419(a)(3) is an adequate and independent state

7

procedural rule for purposes of the procedural default doctrine. Petitioner asserts that the state court incorrectly applied § 15A-3419(a)(3) to bar his claims because his appellate counsel's failure to raise those grounds for relief on direct appeal provides "cause" for his default. Pet'r's Resp. [D.E. # 13] 2-4.

> The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir.2000). A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

McNeil v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). The Fourth Circuit has "consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008).

In general, a "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Wolfe v. Johnson, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (internal quotations and citations omitted). In order for the alleged ineffective assistance of petitioner's appellate counsel to provide cause to excuse any procedural default, petitioner must not have defaulted on the independent and underlying claim of ineffective assistance of appellate counsel and appellate

8

counsel's assistance must have been constitutionally defective. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

II.     Petitioner's Claims

Petitioner appears to raise the following claims in his federal habeas petition: 1) that his right to the effective assistance of counsel was violated; 2) that he was unlawfully convicted of a crime "not legally enacted into law"; 3) that his conviction violates his right to be free from double jeopardy; and 4) that his due process rights were violated on the basis of the above contentions. Pet. [D.E. # 1] 5-10.

III.    Analysis

Respondent contends that petitioner's claims are procedurally defaulted, do not satisfy the deferential standard enunciated in § 2254(d) where applicable, and are otherwise lacking in merit. Resp.'s Supp. Mem. [D.E. # 9] 3-13. The court will address each of petitioner's claims in turn.

A.      Ground One

Petitioner's first claim is that his "conviction was obtained through the ineffective assistance of trial counsel." Pet. 5. He alleges that counsel "failed to investigate or question or supeona [sic] witnesses that defendant Freeman submitted to him, that could have testified to facts that was exculpatory to defendant, and which would have negated the prosecution's theory and trial counsel failed to preserve double-jeopardy claim for appellate review." Id. He maintains that he did not raise these claims on direct appeal of his conviction due to the ineffective assistance of his appellate counsel, but that he did raise them in his MAR. Id. Because petitioner appears to allege two discrete instances of ineffective assistance of counsel, the court will examine these allegations separately.

9

1.    Counsel's failure to procure exculpatory alibi witness testimony.

The court first finds that petitioner has failed to set forth sufficient factual detail in support of his claim that counsel was ineffective for failing to investigate and sponsor the testimony of purportedly exculpatory witnesses at petitioner's trial. Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") requires that the petition "state the facts supporting each ground" for relief alleged in the petition. This minimal pleading requirement is more "demanding" than the simple "notice pleading" standard applicable to general civil actions as required by Rule 8(a) of the Federal Rules of Civil Procedure. Mayle v. Felix, 545 U.S. 644, 655 (2005). This is why the form § 2254 petition, which was utilized by petitioner in this case, instructs the petitioner to "state the *specific* facts that support your claim" and further instructs the petitioner to attach additional pages to his petition if necessary to fully convey his claim. Pet. 5. Ordinarily, "'in order to substantially comply with the Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas review.'" Bullard v. Chavis, 153 F.3d 719, 1998 WL 480727, *2 (4th Cir. Aug. 6, 1998) (unpublished table decision) (quoting Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990)). Petitioner failed to include in his petition or attached documents any specific allegations about the identity of any "exculpatory" witnesses counsel could have called, the content of their putative testimony, why such testimony would have likely affected the outcome of petitioner's trial, and why any decision by counsel to forego such witnesses was constitutionally deficient and prejudicial. Because petitioner wholly failed to include the requisite "specific" factual allegations, he has failed to comply with Rule 2(c) of the Habeas Rules and his claim is subject to

10

summary dismissal on that basis.

Respondent also contends that this claim is procedurally defaulted. Petitioner alleged in his MAR, in far greater detail than he does in the instant petition, that he "immediately produced names of alibi witnesses who would readily testify to his whereabouts during the proximate time of [the] shooting" for which he was convicted. MAR, ex. 6 to Resp.'s Supp. Brief [D.E. # 9-7] 15. Petitioner contended that he informed his counsel that the specific witnesses he named in his MAR, as well as other unnamed witnesses, "would clearly refute the untruthful and vindictive testimony of the states witness's because defendant was physically present with them during the proximate time the state says the shooting took place." Id. He maintained that counsel's failure to even contact the witnesses was both deficient performance and prejudicial in that it deprived the jury of important alibi testimony. Id. In denying petitioner's MAR, the state court found both that petitioner's claim was barred by N.C.G.S. § 15A-1419(a)(3) and that, in the alternative, "Defendant has not alleged facts sufficient to establish ineffectiveness of counsel." MAR Order, ex. 7 to Resp.'s Supp. Brief [D.E. # 9-8] 13.

Respondent contends that the MAR court's "express application of the state statutory bar [for claims which could have been raised on direct appeal but were not] prohibits this Court's review of claims Petitioner raised in his MAR (such as those concerning the substances of ground (1)) that he did not, but could have, raised on direct appeal." Resp.'s Supp. Mem. [D.E. # 9] 5. Respondent also argues that petitioner's effort to show cause for his default–that he purportedly received the ineffective assistance of appellate counsel due to counsel's failure to raise this issue on appeal–is unavailing because the underlying ineffective assistance of appellate counsel claim is itself meritless. Id. at 5-6.

11

The state court's, and respondent's, theory that petitioner has procedurally defaulted this claim in federal habeas review is predicated on the state court's finding that petitioner could have raised his ineffective assistance claim on direct review, but that he failed to do so. While it is true that in North Carolina a defendant may raise a claim of ineffective assistance of counsel on direct appeal, the claim must be susceptible to review on a "cold record," meaning that "'no further investigation is required, i.e., claims that may be developed and argued without such ancillary proceedings as the appointment of investigators or an evidentiary hearing.'" State v. Canty, 736 S.E.2d 532, 535 (N.C. Ct. App. 2012) (quoting State v. Thompson, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004)). Petitioner's claim in his MAR alleged that counsel was ineffective for failing to investigate alibi witnesses and present testimony that petitioner could not have committed the crime for which he was convicted. This court fails to see how a claim that counsel was ineffective for failing to investigate alibi witnesses could be decided on a "cold record" of the trial proceedings, which necessarily would be silent as to matters which counsel did not investigate and thus would not lend itself to a proper analysis of whether the defendant suffered constitutionally significant prejudice. Nevertheless, for the reasons identified by respondent, petitioner's underlying claim lacks merit both as a substantive matter and as a threshold for providing "cause" for the default attributed to him. Thus, the claim remains subject to summary dismissal.

Petitioner claims his trial counsel rendered ineffective assistance in violation of his rights under the Sixth Amendment to the United States Constitution, as explicated in Strickland v. Washington, 466 U.S. 668 (1984). Thus, it is appropriate at this juncture to set forth the standards governing the court's analysis of such claims. The United States Court of Appeals for the Fourth Circuit recently described these standards as follows:

12

To demonstrate ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Regarding the first prong, a "deficient" performance is one that falls "below an objective standard of reasonableness." Id. at 511. Petitioner must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Harrington, [562 U.S. at __], 131 S.Ct. at 787 (internal quotations marks omitted). See also Strickland v. Washington, 466 U.S. 668, 687 (1984) ("First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").

[A court's] deferential assessment of counsel's performance must "include [] a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time . . . ." Wiggins, 539 U.S. at 523 (internal quotation marks omitted). Further, we must resist the temptation to "second-guess counsel's assistance after conviction or adverse sentence" and make "every effort . . . to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Indeed, we must review with "scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Harrington, [562 U.S. at __], 131 S.Ct. at 788 (internal quotation marks omitted).

Decastro v. Branker, 642 F.3d 442, 450 (4th Cir. 2011).

As to the second Strickland prong, prejudice, petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Thus, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This showing "requires a substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. __, __, 131 S.Ct. 1388, 1403 (2011) (internal quotations omitted). "The totality of the evidence before the judge or jury must be considered in making this determination." Williams v. Ozmint, 494 F.3d 478, 484 (4th Cir. 2007) (internal quotation marks omitted).

13

In his MAR, petitioner provides a number of so-called alibi witnesses whom he argues counsel should have investigated and presented at trial. According to petitioner, "Kathy Haughton would have testified that since midafternoon (approximately 2 or 3pm) defendant was at his brother's residence on the date of this incident, and during the time of this shooting . . . ." MAR, ex. 6 to Resp.'s Supp. Brief [D.E. # 9-7] 19. Likewise, petitioner asserted, "Shelia Morris would have testified to having, herself, driven defendant to his terminally ill siblings house that particular day and approximate time." Id. at 20. Finally, petitioner claimed that "Eugene Freeman (sibling) would testify also to the defendant (his brother) being at his residence before and during the proximate time of this shooting because defendant was his main caretaker at night." Id. Notably, petitioner did not present an affidavit or other formalized declaration by any of these witnesses with his MAR.

Petitioner has failed to show deficient performance or prejudice flowing from counsel's failure to investigate and present these witnesses at trial because even petitioner's own testimony at trial about his whereabouts conflicts with the testimony of the witnesses whom he faults counsel for failing to present. First, although petitioner testified at his trial, he did not testify that he was located at his brother's residence at any point on the day or evening of the shootings. He specifically testified that he could not remember where he was after 7pm on the night of the shootings. Trial Transcript Vol. III, ex. 11 to Resp.'s Supp. Mem. [D.E. # 9-13] 191. Given petitioner's present contention that he was his terminally ill brother's primary nighttime caretaker, it is simply incredible that petitioner would not have remembered at the time of his trial that he had visited his brother's house to provide care. Moreover, petitioner's own testimony pointedly conflicts with salient details of the putative testimony of at least some of his witnesses. Petitioner testified at his trial that he visited Peele's apartment, which was adjacent to the apartment where the victims were visiting, after

14

he got off work, and that he left there at approximately 6:30. See id. at 190-91. Thus, any testimony by Kathy Haughton that petitioner was at his brother's residence "since midafternoon (approximately 2 or 3 pm)" would have been patently incredible and in conflict with petitioner's own testimony about his whereabouts.

Because petitioner himself disclaimed any memory of where he was after he left the scene of the shootings and failed to testify that he visited his brother's house on the day of the shootings, despite his purported duties as his brother's primary nighttime caretaker, counsel very reasonably could have discredited the testimony of any witnesses who purportedly would have testified that petitioner was at his brother's house when the shooting occurred. In short, even assuming that petitioner's alibi witnesses exist, that they would have testified as petitioner asserts, and that he made counsel aware of them, petitioner has failed to show that counsel's decision to forego presenting such testimony was deficient or that it prejudiced the outcome of petitioner's trial given both his own contradictory trial testimony and all of the inculpatory evidence relied upon by the jury in convicting petitioner. Because petitioner therefore cannot satisfy the Strickland standard with respect to this claim, his appellate counsel was not ineffective in failing to raise the claim on direct appeal and petitioner cannot show the requisite "cause" for his default of the claim.

Accordingly, to the extent the MAR court alternatively denied this claim on its merits and this court is required to apply § 2254(d), petitioner clearly cannot show that such finding is contrary to or an unreasonable application of Strickland, or that it is based upon an unreasonable determination in light of the facts before the MAR court.[2] Thus, this claim is also subject to

---

[2] In Harrington, the Supreme Court discussed the interplay of the Strickland ineffectiveness standard and the deferential review standard of AEDPA and described the very high burden imposed (continued...)

15

dismissal pursuant to § 2254(d).

      2.      Counsel's failure to preserve petitioner's double jeopardy claim.

Petitioner also claims that he received the ineffective assistance of trial counsel due to counsel's failure "to preserve double-jeopardy claim for appellate review." Pet. 5. In his separately numbered Ground Three of the petition, petitioner describes his double jeopardy claim as follows: "It was a violation of the double jeopardy clause to try, convict and sentence me to AWDWISIWIK and for attempted murder on the same victims. In this case consecutive sentences was given for the

---

²(...continued)

by § 2254(d) when a habeas petitioner alleges ineffective assistance of counsel.

      The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, *supra*, at 410. A state court must be granted deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

. . .

      Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles[ v. Mirzayance, 556 U.S. __, __, 129 S.Ct. 1411,1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at __, 131 S.Ct. at 785, 788 (emphasis in original).

assault and the attempted murder of at least two victims." Pet. 8. Petitioner further claims that he did not raise this claim of ineffective assistance of counsel on direct appeal because of the ineffective assistance of appellate counsel.

Petitioner's MAR clarified the basis for his "double jeopardy" argument. In the MAR, petitioner argued that the indictment charging him with AWDWISIWIK and attempted first degree murder was unconstitutionally "multiplicitous" because it charged "a single offense in different counts" and "resulted in Freeman receiving multiple consecutive sentences for one act, in violation of the double jeopardy clause . . . ." MAR, ex. 6 to Resp.'s Supp. Brief [D.E. # 9-7] 23. Ultimate, because petitioner's claim that his conviction violated his double jeopardy rights is without merit, he cannot show the requisite "cause" for his procedural default of the claim that counsel was ineffective in failing to preserve the claim for appellate review. Likewise, petitioner cannot show the requisite deficient performance or prejudice to succeed on the ineffective assistance claim.

In general, "[w]hile it is true that an indictment charging a single offense in several different counts is multiplicitous and subjects a defendant to a risk of multiple sentences for a single offense in violation of the Double Jeopardy Clause, a defendant may be convicted of separate offenses arising from a single act if each charge requires proof of a fact that the other does not." United States v. Talib, 347 F. App'x 934, 938 (4th Cir. 2009) (unpublished decision). See also Blockburger v. United States, 284 U.S. 299, 304 (1932) ("Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

North Carolina courts have repeatedly addressed, and rejected, petitioner's claim because the

17

elements of the offenses for which petitioner was convicted are viewed as distinct by North

Carolina's courts.

> The elements of attempted first-degree murder are: "(1) a specific intent to kill
> another person unlawfully; (2) an overt act calculated to carry out that intent, going
> beyond mere preparation; (3) the existence of malice, premeditation, and deliberation
> accompanying the act; and (4) a failure to complete the intended killing." State v.
> Peoples, 141 N.C.App. 115, 117, 539 S.E.2d 25, 28 (2000). In contrast, the elements
> of assault with a deadly weapon with intent to kill are: "(1) an assault; (2) with a
> deadly weapon; (3) with the intent to kill[.]" State v. Coria, 131 N.C.App. 449, 456,
> 508 S.E.2d 1, 5 (1998); see also N.C. Gen.Stat. § 14–32(c) (2007). Thus, "[a]ssault
> with a deadly weapon with intent to kill requires proof of an element not required for
> attempted first-degree murder: the use of a deadly weapon. It is not a lesser-included
> offense of attempted first-degree murder." State v. Cozart, 131 N.C.App. 199, 204,
> 505 S.E.2d 906, 910 (1998). Furthermore, attempted first-degree murder includes
> premeditation and deliberation, which are not elements of assault with a deadly
> weapon with intent to kill.

State v. Garris, 191 N.C.App. 276, 286-87, 663 S.E.2d 340, 349 (N.C. Ct. App. 2008). Hence, "a

trial court may convict and sentence a defendant of both attempted first-degree murder and assault

with a deadly weapon with intent to kill without subjecting defendant to double jeopardy[.]" Id.

Petitioner contends that, notwithstanding the North Carolina courts' uniform rejection of his

claim, he has suffered a double jeopardy violation. First, it is evident that petitioner's assault charge

includes at least one element, use of a deadly weapon, which is not a required element of petitioner's

attempted murder charge. Petitioner does not appear to dispute this fact. Rather, the thrust of

petitioner's argument appears to be that the "intent to kill" element of his assault charge necessarily

encompasses the premeditation and deliberation elements of the attempted murder charge. See

Pet'r's Resp. [D.E. # 13] 5 ("When in fact intent, willfully, knowingly, premeditation, and

deliberation are all the same or a similar state of mind or mens rea . . . ."). However, once again, the

North Carolina courts, the only entities charged with interpreting the terms of criminal statutes like

18

the statute establishing the assault offense under which petitioner was convicted, have rejected petitioner's claim because "premeditation" and "deliberation," as those terms are applied in the attempted murder context, are distinct from the "intent to kill" element set out in the assault statute.

> Furthermore, the elements of premeditation and deliberation are not identical in substance to the intent to kill required by G.S. § 14–32(a). Although an intent to kill is "a necessary constituent of the elements of premeditation and deliberation in first degree murder," State v. Gordon, 241 N.C. 356, 358, 85 S.E.2d 322, 324 (1955), premeditation and deliberation go beyond merely an intent to kill. In the context of attempted first degree murder, these elements require evidence that the defendant formed the intent to kill (1) at some period of time, however short, before the attempted killing, and (2) "in a cool state of blood rather than under the influence of a violent passion suddenly aroused by sufficient provocation." State v. Harshaw, 138 N.C.App. 657, 659, 532 S.E.2d 224, 226, *disc. review denied*, 352 N.C. 594, 544 S.E.2d 793 (2000) (citation omitted).

State v. Peoples, 141 N.C.App. 115, 120, 539 S.E.2d 25, 29 (N.C. Ct. App. 2000). Hence, it is evident that, as a matter of settled North Carolina law, the elements of the assault with a deadly weapon with intent to kill and attempted first degree murder offenses for which petitioner was convicted are at least partially distinct. As such, petitioner's conviction on these two offenses and resulting sentences do not offend double jeopardy. Because petitioner's double jeopardy claim lacks merit, trial counsel was not ineffective for failing to preserve the issue for appellate review and, moreover, appellate counsel's failure to raise the issue on direct appeal does not provide the requisite "cause" for petitioner's procedural default of the claim. Respondent is therefore entitled to summary judgment on Ground One of the petition.

B.    Ground Two

Petitioner's second ground for relief is that he was "tried and convicted for a crime not legally enacted into law." Pet. 6. In support, he argues "the trial court lacked jurisdiction to try me, or sentence me to a crime that does not exist or has not been legally enacted into law as set by the

19

procedures shown under Article II, Sect. 21 on the charges of attempted first degree murder. It is not a legally enacted crime under N.C. law." Id. at 6-7. Petitioner also argues that his appellate counsel was ineffective in failing to raise this claim on direct review, such that he has shown "cause" for any procedural default of the claim in federal habeas proceedings.

Respondent argues that petitioner has procedurally defaulted this claim due to the state court's finding that this claim was barred during MAR proceedings under N.C.G.S. § 15A-1419(a)(3). Resp.'s Supp. Mem. [D.E. # 9] 9-10. Respondent also maintains that the claim is devoid of merit and that, therefore, petitioner cannot show "cause" for his default of the claim and it may also be denied as a substantive matter. Id. at 10-11.

While constitutional due process certainly does not countenance a conviction based upon a non-existent crime, petitioner's claim that the crime of attempted first degree murder does not exist is incorrect as a matter of North Carolina law. Petitioner appears to base his claim on the fact that there is no statutory offense denominated "attempted first degree murder" in North Carolina. However, the Supreme Court of North Carolina, which is the final arbiter on the interpretation of North Carolina law, has previously held that N.C.G.S. § 15-170, which provides that "[u]pon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime," not only validates the existence of the crime of attempted first degree murder, but also permits a conviction on an indictment charging only that offense. State v. Jones, 359 N.C. 832, 835-37, 616 S.E.2d 496, 498-500 (N.C. 2005). In other words, North Carolina law recognizes attempted first degree murder as a separate, independent offense, not just a permitted lesser-included offense to a completed murder. Thus, it is apparent that the crime of attempted first

20

degree murder exists within North Carolina law. Petitioner's indictments expressly charged him with multiple counts of this offense, see Indictments, Record on Appeal, ex. 1 to Resp.'s Supp. Brief [D.E. # 9-2] 11-13, and each indictment sufficiently set out the elements of the offense to alert petitioner to the offenses with which he was charged. Thus, petitioner's claim that he was convicted "for a crime not legally enacted into law" is without merit as a substantive matter and as a threshold for a finding of "cause" to excuse his procedural default of the claim. Respondent is entitled to summary judgment on Ground Two of the petition.

C. Ground Three

Ground Three of the petition alleges "defendant's conviction [was] obtained by a violation of the protection against double-jeopardy." Pet. 8. As discussed above, petitioner's convictions on multiple charges of assault and attempted first degree murder did not offend his double jeopardy protections. Thus, this claim is without merit as a substantive matter and as a threshold for a finding of "cause" to excuse petitioner's procedural default of the claim. Accordingly, respondent is entitled to summary judgment on Ground Three of the petition.

D. Ground Four

In Ground Four, petitioner states "my conviction was obtained through violations of the due process of law clause." Pet. 10. In support, he alleges that he "was not afforded the effective assistance of counsel," "was deprived of presenting evidence in [his] defense," "was prosecuted under a provision of law that was never enacted into law," and his "appellate counsel failed to ask for review of these issues on appeal." Id. As respondent has suggested, this Ground appears to be a summary of the prior Grounds for relief discussed in the petition. See Resp.'s Supp. Mem. [D.E. # 9] 13. Petitioner does not present any new or distinct allegations of error in support of his "due

21

process" claim in Ground Four. Other than the arguments alleged in prior portions of the petition, petitioner does not state how he was deprived of the effective assistance of counsel or the opportunity to present evidence in his defense. As the court has already found, petitioner's claims that he was denied the effective assistance of trial or appellate counsel are unavailing on the merits, much more so when considered through the deferential review required by § 2254(d) given the MAR court's finding that petitioner failed to allege "facts sufficient to establish ineffectiveness of counsel." Moreover, other than the so-called exculpatory witnesses examined as part of Ground One of the petition, petitioner wholly fails to indicate what "evidence" he was denied the opportunity to present at trial. Finally, as previously discussed, petitioner's claim that he "was prosecuted under a provision of law that was never enacted into law" is incorrect as a matter of law. Thus, petitioner has failed to allege a viable claim that his conviction violates any tenet of constitutional due process. Respondent is entitled to summary judgment on Ground Four of the petition.

IV.    Certificate of Appealability

Having determined that respondent is entitled to summary judgment and the petition is due to be dismissed, the court must now consider whether petitioner is entitled to a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel,

22

529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the petition in light of the applicable standards, the court finds that reasonable jurists would not find the court's treatment of the petition debatable or wrong and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the reasons stated above, respondent's motion for summary judgment [D.E. # 8] is GRANTED and the petition is DISMISSED. The court DENIES a certificate of appealability. The clerk of court is DIRECTED to close this case.

SO ORDERED. This the 12 day of March, 2013.

James C. Fox

JAMES C. FOX
Senior United States District Judge

23